### In re VALENTINE.

(Surrogate's Court, New York County. March 13, 1913.)

1. TAXATION (§ 895*)—TRANSFER TAXES—VALUE OF PROPERTY.

In determining the value of corporate stock for the imposition of trans-. fer taxes, evidence of a sale of the stock some two years before the death of the decedent is too remote to establish a satisfactory criterion, particularly where the transfer was between large stockholders.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1714–1721; Dec. Dig. § 895.*]

2. TAXATION (§ 895*)—TRANSFER TAXES—CORPORATE STOCK.

While the book value of corporate stock represents its intrinsic worth, it may not represent its market value, which is the basis for the imposition of transfer taxes, but if there have been no sales of the stock in the open market, the book value furnishes the nearest approximation to the market value.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1714–1721; Dec. Dig. § 895.*]

3. TAXATION (§ 895*)—TRANSFER TAXES—CORPORATE STOCK.

In ascertaining the value of inactive corporate stock for the imposition of transfer taxes, a deduction of 10 per cent. from the book value placed upon merchandise, bills receivable, etc., should, in the absence of competent evidence, be made for the purpose of ascertaining the market value.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1714–1721; Dec. Dig. § 895.*]

4. TAXATION (§ 895*)—TRANSFER TAXES—GOOD WILL.

In estimating the good will of a corporation which had for a long time been in business, to determine the value of corporate shares for the imposition of transfer taxes, where the appraiser estimated the good will by multiplying the average yearly profits by two, the average yearly profits should be determined from the last two years' profits alone.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1714–1721; Dec. Dig. § 895.*]

5. TAXATION (§ 895*)—TRANSFER TAXES—CORPORATE STOCK.

Where there was no evidence that the advice or counsel of deceased contributed to the success of a corporation, there can be no deduction on account of his death, in estimating for transfer taxes the value of corporate stock which he owned.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1714–1721; Dec. Dig. § 895.*]

6. TAXATION (§ 895*)—TRANSFER TAXES—CORPORATE STOCK.

In estimating for transfer taxes the value of corporate stock, it is improper to make a deduction for funds proposed to be spent for advertising, for it must be assumed that the advertising will result in increased business carrying a profit.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1714–1721; Dec. Dig. § 895.*]

In the matter of the estate of Henry C. Valentine; on appeal by the State Comptroller from the order fixing the transfer tax, and appraising the property for taxation. Order reversed, and appraiser's report remitted for correction.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Joline, Larkin & Rathbone, of New York City (Albert Stickney, of New York City, of counsel), for executrix.

Thomas E. Rush, of New York City (Ellwood M. Rabenold, of New York City, of counsel), for State Comptroller.

FOWLER, S. The State Comptroller appeals from the order fixing tax, and alleges that the value placed by the appraiser upon the decedent's holdings of stock in the Valentine Company was less than its market value, while the executor appeals upon the ground that the appraiser's valuation was excessive.

[1-3] The decedent died on the 15th day of January, 1912. At that time he was the owner of 2,636 shares of the stock of the Valentine Company. The entire capital stock of the company consists of 125,000 shares of the par value of $100 a share. The appraiser valued the stock at $125.72 a share. The State Comptroller contends that he should have valued it at $160.72 a share, while the executor contends that the valuation should not exceed $100 a share. The stock is not customarily bought and sold in the open market. The evidence shows that none of the stock had been sold during the two years prior to decedent's death. There was evidence that in the early part of January, 1910, the holdings of one of the large stockholders, amounting to 2,500 shares, were transferred to some of the other large stockholders at $90 a share. The length of time which elapsed between the making of this sale and the death of the decedent, as well as the peculiar circumstances under which the sale took place, renders the price paid at that time no satisfactory criterion of the value of the stock at the date of decedent's death. Matter of Malcolmson, Surr. Decs., 1912, p. 691. As there was no competent evidence of sales of the stock the appraiser was correct in ascertaining the book value of the stock from the assets and liabilities of the company. The annual statement of the company, made on the 30th day of November, 1911, showed that the book value of the stock at that date was $129.04 a share, exclusive of the value of the good will. While the book value of the stock represents its intrinsic worth, it may not represent its market value, and the latter is that which it is the duty of the appraiser to ascertain. But if there have been no sales of the stock in the open market, he must necessarily fall back upon the book value as the nearest approximation to the market value. In ascertaining the value of securities that are not customarily bought and sold in the open market it would seem that in the absence of bona fide sales the book value of the assets of the corporation should be taken as the basis of computation. The books of the corporation show the valuation which the corporation places on its assets; and, in the absence of evidence that it is excessive or incorrect, it should be taken as the actual value of such assets, but a reasonable percentage should be deducted from the value placed upon merchandise, bills receivable, and plants in order to ascertain their market value. In the absence of competent evidence upon this point such deduction should not exceed 10 per cent. This rule has the advantage of mathematical certainty; and when to the book value as thus ascertained is added the value of the good will of the business, the result very closely approxi-

mates the market value of the stock. The opinions of stockholders and such witnesses are usually speculative, and vary so materially as to render it difficult for the appraiser to ascertain the market value based upon such evidence. Deducting 10 per cent. from the book value of the plant, merchandise, and bills receivable, and taking into consideration the change effected in the cash account as shown by the testimony of Phillips, it appears that the book value of the stock at the date of decedent's death was $112.18 a share, exclusive of the value of the good will.

[4, 5] The average annual net profits for the three years immediately preceding decedent's death was $198,064.38, and the appraiser ascertained the value of the good will by multiplying this average by two. In view of the fact that the business has been conducted under the same name since 1832, this would seem a very reasonable value for the good will of the business. In Von Au v. Magenheimer, 126 App. Div. 257, 110 N. Y. Supp. 629, the value of the good will was found to be five times the average net annual profits. In the Matter of Keahon, 60 Misc. Rep. 508, 113 N. Y. Supp. 926, the value of the good will was fixed at three times the net annual profits. As the appraiser ascertained the value of the good will to be twice the average net annual profits, he should have taken the average profits for the two years immediately preceding the decedent's death, instead of the three years. This would make the value of the good will $383,308, or about $30.66 a share. According to this method of calculation the value of each share of stock at the time of decedent's death was $142.84. The annual statement for 1911 shows that after providing for a dividend of 10 per cent. there was a surplus of about $16 a share. The appraiser, after ascertaining the book value of the stock, arbitrarily deducted therefrom 35 points, and found that the remainder was its market value. There appears to be no. justification for such a deduction. There was no evidence that the decedent's personality or business ability was in any way responsible for the success which the company had achieved.

[6] The amount which the company intended to expend for advertising purposes during the year 1912 should not be taken into consideration, as it is reasonable to assume that such advertising would not be an absolute loss, but would result in a corresponding increase in the business of the company. The other possible sources of increased expenses are too remote to be taken into consideration in ascertaining the value of the stock at the date of decedent's death. From the appraiser's report and all the evidence adduced before him I find that the value of the decedent's holdings of stock in the Valentine Company at the date of his death was $142.84 a share.

The order fixing tax will be reversed, and the appraiser's report remitted to him for correction.