Argued December 1, affirmed December 13, 1927, rehearing denied January 10, 1928.

IN RE ESTATE OF LINDA A. FRANK, DECEASED.

HENRY J. FRANK, EXECUTOR, v. THOMAS B. KAY, STATE TREASURER.

(261 Pac. 893.)

**Taxation—Term "Market Value," Used in Statute for Determining Inheritance Tax, is Synonymous With Cash or Actual Value (Or. L., § 1216).**

1.  Under section 1216, Or. L., providing that property for purpose of inheritance tax shall be appraised at its market value, term "market value" is used synonymously with "cash value" or "actual value."

**Taxation—Computation of Inheritance Tax on Stock Which Most Nearly Approximates Its Market Value is Proper.**

2.  In computing inheritance tax on stock, method of computation which most nearly approximates market value is proper.

**Taxation—Book Value, Earnings, Goodwill and Other Circumstances Influencing Person to Buy Stock Should be Considered in Determining Actual Value of Stock in Close Corporation for Purpose of Inheritance Taxation.**

3.  In determining actual value of stock in close corporation for purpose of computing inheritance tax on stock, book value, earnings, dividends, goodwill, future prospective profits, and any other circumstances influencing person ready, able and willing to buy stock should be considered; resort being made to all business tests ·. and measures.

———

1.  Valuation of property for purposes of inheritance tax, see note in 24 A. L. R. 1041.

Corporations—Book Value of Stock in Close Corporation is Prima Facie True Value.

4. Book value of stock in close corporation is *prima facie* true value as being declaration of corporation of value of its property.

Taxation—Inheritance Tax is Intended to be Levied on Basis of Real Value of Property Inherited.

5. Purpose of inheritance tax law is to exact a tax from those who inherit property, on basis of its real value.

Taxation—Method of Computing Inheritance Tax on Stock in Close Corporation Which Would Lead to Inequitable Result Should be Rejected.

6. In computing inheritance tax on stock in close corporation, method of computation which would lead to inequitable or unjust results should be rejected.

Taxation—Book Value is Proper Basis for Determining Value of Stock in Close Corporation for Inheritance Tax Purposes Unless Leading to Inequitable Results.

7. Value of stock in close corporation may be best determined for inheritance tax purposes by using its book value as basis, unless there is evidence disclosing that such would lead to unreasonable or inequitable results.

Taxation—Valuation Placed on Stock of Close Corporation for Inheritance Tax Purposes Held Authorized as Representing Approximately Its Market Value.

8. In proceedings to assess stock in close corporation for purpose of inheritance taxation, valuation placed on stock by trial court *held* authorized as representing approximately its market value.

---

Market, 38 C. J., p. 1263, n. 64, 66, p. 1266, n. 91.
Taxation, 37 Cyc., p. 1579, n. 63, p. 1581, n. 70.

From Multnomah: GEORGE TAZWELL, Judge.

Department 2.

'AFFIRMED.    REHEARING DENIED.

For appellant there was a brief over the name of *Messrs. Joseph, Haney & Littlefield,* with an oral argument by *Mr. John C. Veatch.*

For respondent there was a brief over the names of *Mr. I. H. Van Winkle,* Attorney General, and *Mr. Dean H. Dickinson,* with an oral argument by *Mr. Frank S. Sever.*

BELT, J.—On November 7, 1923, Linda A. Frank died bequeathing to her son, Henry J. Frank, 42 shares of stock in the Blumauer-Frank Drug Company, a corporation engaged in the wholesale drug business in the City of Portland. In the administration of the estate, the appraisers, for the purpose of determining the amount of inheritance tax, placed a valuation of $78,978.90 upon the stock, or $1,880.45 for each share. Upon the adoption of the report of the appraisers, the State Treasurer filed objections asserting that the stock was not appraised at its actual value. After hearing, the court set aside its former order approving the report of the appraisers, and reassessed the stock upon a basis of $3,911.30 for each share. The executor of the estate appeals.

This corporation was organized with a capital stock of $200,000, divided into 200 shares of the par value of $1,000 each. The stock is closely held by the members of the Frank family and is not listed or offered for sale on the open market. The record discloses that, for the ten years prior to and including the year of the death of decedent in 1923, the earnings of the corporation averaged $43,862.30 per year. For the five years prior to and including 1923 the earnings averaged $26,378.90. In appellant's brief the average earnings for such period was, according to our arithmetic, erroneously stated to be $30,087.29. The greatest profit was $106,481.67, in 1917, during the war period. However, in 1921 there was great deflation in prices as a result of the war and the company sustained a loss of $97,169.11. The corporation paid no dividends on the stock until the year 1917 and since then has declared an annual dividend of 6 per cent on its capitalization. In other words, $12,000

was each year distributed among the stockholders and the balance of the earnings used in the business as working capital.

The trial court, in keeping with the contention of the State Treasurer, determined the amount of inheritance tax by assessing the stock on the basis of its "book value." The total valuation of the stock was thus found to be $781,832.78. The appraisers took the average earnings for a period of five years and considered this as 8 per cent of the value of the stock. They fixed the total valuation of the stock at $376,091 —computed on the basis of the average earnings as stated in appellant's brief — or a valuation of $78,978.90 for the 42 shares. However, if the average earnings for five years, as we compute it, is $26,378.90 and this sum represents 8 per cent of the value of the stock, then its total valuation, according to appellant's theory, would be $329,736.25 and not $376,091.

1-5. What is the correct method for computing an inheritance tax upon stock in a close corporation such as the evidence discloses this to be? How can we best arrive at the true value of this stock? The statute (Section 1216, Or. L.) provides that the property shall be appraised at its "market value." We think "market value" is used synonymously with "cash value" or "actual value": *Tax Com. of Ohio v. Clark,* 20 Ohio App. 166 (151 N. E. 780); *In re Dupignac's Estate,* 123 Misc. Rep. 21 (204 N. Y. Supp. 273). If the stock in question had been sold in the open market freely, such sales would be a good criterion of the true value of the stock. In the instant case there have been no sales within recent years that would have any probative value in determining the market price. We must, therefore, resort to

other tests. There are many factors to be taken into consideration in estimating the value of the stock in a business of this character. Perhaps there is no method of computation which the human mind could devise that would prove entirely satisfactory in ascertaining the value of stock closely held in a corporation of this kind. The law is satisfied by selecting that method which most nearly approximates market value. It is easy to conceive of corporations the book value of whose stock is either far above or below the price it would bring if sold for cash upon the open market under normal conditions. Likewise there are certain holding companies which have no earnings and yet their stock represents great value. It would be utterly absurd to assess stock in a corporation whose chief asset was its timber holdings on the basis of earnings. In such case there might be no earnings, yet it could not reasonably be contended that the stock had no value. It is apparent, therefore, that, in determining the actual value of stock in a close corporation, book value, earnings, dividends, goodwill of the business, future prospective profits, and any other fact or circumstance which would influence a person ready, able and willing to buy such stock, should be taken into consideration. Resort should be made to all business tests and measures. The book value of stock in corporations of the kind under consideration is *prima facie* the true value. It is the declaration of the corporation as to the value of its property. It is the purpose of the law to exact a tax from those who inherit property, on the basis of its real value.

6, 7. A method of computation which would lead to inequitable or unjust results should be rejected. It is not advisable to lay down a hard-and-fast rule

which should be followed in estimating the value of stock in a close corporation. Any method used must stand the test of reason. After all, courts should be more concerned with results than methods. In recent years the tendency is toward a consideration of all factors, such as (1) asset value; (2) selling price; (3) earning capacity, and the result obtained is the effect of compromise: Pinkerton & Millsap's Inheritance and Estate Taxes, § 324. It may, however, be stated with some degree of certainty that the value of stock in close corporations may be best determined for inheritance tax purposes by using its book value as a basis, unless there is evidence disclosing that such would lead to unreasonable or inequitable results: *In re Valentine,* 147 N. Y. Supp. 231; *In re Dupignac's Estate, supra; In re Jones' Estate,* 172 N. Y. 575 (65 N. E. 570, 60 L. R. A. 476); *In re Estate of Felton,* 176 Cal. 663 (169 Pac. 392); *State* v. *Pabst,* 139 Wis. 561 (121 N. W. 351). But see *In re Jones' Estate* (Ohio App.), 155 N. E. 395, wherein the court refused to accept the book value of the stock as its actual value. In the case last cited there was considered (1) the value and sale of stocks of a similar kind; (2) the activities of the corporation during the different periods of its existence; (3) its earnings; (4) book value of the stock during various years; (5) future prospects, and (6) dividends.

8. The appraisers' valuation of the stock is based primarily upon the earnings of the corporation for a five-year period, whereas, if the same method had been applied to a ten-year period, the value of each share of stock would be $2,816.39 rather than $1,880.45 per share. The World War caused abnormal price conditions. If, in estimating average

yearly earnings, it was proper to take into consideration the great deflation in prices and the loss sustained in 1921, it would seem that this should be balanced with the immense profit earned in 1917. In 1923, there was a profit of approximately $74,000. The stipulation discloses that, at the end of that year, the invested capital of the business amounted to approximately $781,000. Deducting the amount of the earnings from the invested capital at the end of the year, it amounts to $707,000. It will thus be seen that over 10 per cent on invested capital was earned during the year. There was an average return of over 8 per cent on the average investment during the five-year period considered by the appraisers. In view of the earning capacity of the stock, and other factors taken into consideration, we think the valuation placed upon it by the lower court represents approximately its market value. If this stock were offered for sale on the open market and it could be shown to a prospective purchaser that the earnings on the original capital over a ten-year period had averaged 22½ per cent and that it would earn over 10 per cent on his investment on the basis of its book value, it is reasonable to assume that there would be no difficulty in disposing of the stock.

We conclude that the decree of the lower court should be affirmed.

AFFIRMED. REHEARING DENIED.

RAND, C. J., and BEAN and BROWN, JJ., concur.