Argued March 22, reversed in part, affirmed in part
July 11, 1956

IN THE MATTER OF THE ESTATE OF EDITH M. McGINN,
DECEASED

UNANDER *v.* MURPHY

299 P. 2d 813

*William E. Dougherty,* Special Assistant Attorney General, Portland, argued the cause for appellant. With him on the brief was Robert Y. Thornton, Attorney General, Salem.

*Arthur H. Lewis,* Portland, argued the cause and filed a brief for respondent.

Before WARNER, Chief Justice, and TOOZE, ROSSMAN, LUSK, BRAND and PERRY, Justices.

ROSSMAN, J.

This is an appeal by the Honorable Sig Unander, State Treasurer, from a decree of the Probate Department of the Circuit Court for Multnomah County, which overruled objections presented by him to the court's determination of the inheritance tax payable by the estate of Edith M. McGinn, deceased. ORS 118.010 through 118.700 entrusts the administration of the inheritance tax law to the State Treasurer. The

appellant State Treasurer presents two assignments of error. They follow:

> "The probate court erred in allowing a deduction for the federal estate tax in computing the taxable remainder passing to Chasanna Investment Company."

> "The lower court erred in determining that the proportional valuation of decedent's interest in the family trust should be discounted."

ORS 118.010 imposes a tax upon the passing of property in various ways including by will, grant and gift "intended to take effect in possession or enjoyment after the death of" the donor. The same section of our laws says:

> "Any transfer of property made by a decedent by deed, grant, bargain, sale or gift, within three years prior to the decedent's death without a valuable and adequate consideration therefor, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this chapter."

Edith M. McGinn, with whose estate this appeal is concerned, died July 20, 1948. She disposed, by a will and two trust instruments, the assets which she possessed.

The will was executed April 22, 1947. It provided for cash bequests, the payment of debts and funeral expenses "and also all estate and inheritance taxes that may be due from my estate." The remainder of the estate was bequeathed in trust to a corporation entitled Chasanna Investment Company. The income earned by the remainder was payable to Catherine F. Butz, sister of Edith M. McGinn, for life. The will directed that upon Mrs. Butz' death "the trust shall

terminate and the entire property shall vest absolutely in the Chasanna Investment Company clear and free of said trust.'' Such were the material parts of the will.

We come now to the first of the two trusts. On the day the decedent signed her will the aforementioned Chasanna Investment Company executed a declaration of trust in which it admitted the receipt from Edith M. McGinn of several assets which we need not now describe. The trust instrument bound Chasanna Investment Company to hold the assets in trust for the benefit of the trustor during her life. After the trustor's death the trustee was bound to pay the decedent's debts ''including funeral expenses and estate and/or inheritance taxes that may be due from her estate including all taxes that may be owing on account of the transfer of property heretofore made by her.'' Those payments having been made, the trust instrument required the trustee to pay the legacies mentioned in the will and after that had been done to pay the net income yielded by the remainder of the assets to Catherine F. Butz for life. Upon the death of the survivor of the trustor and Mrs. Butz, ''the trust shall terminate,'' so the instrument provided, ''and the entire property shall vest absolutely in the Chasanna Investment Company free and clear of said trust.''

We have now reached the second trust which Edith McGinn created. It originated in a declaration of trust dated March 19, 1946, which was signed by John L. McGinn, a brother of the deceased. In the document Mr. McGinn admitted the transfer to him by his sister Edith of some assets which we will later mention, and declared that he held them in trust for her for

life. The declaration provided that upon the trustor's death the trust should terminate and that thereupon the trustee should distribute the assets in equal shares to a sister of the trustor, Margaret E. Stewart, and the trustee, John L. McGinn. The instrument directed that if, upon the trustor's death, the other assets of her estate were not sufficient in amount to meet the bequests and the ''inheritance taxes that may be owing to the United States and the State of Oregon and also any other indebtedness of trustor that may be owing at said time, that then in order to keep the property'' transferred to the trustee ''intact the trustee shall collect from the beneficiaries * * * in proportion to their respective interests a sum sufficient to meet said bequests and obligations.''

The decedent's probated estate consisted of money, personal effects, stocks and bonds, all of which were appraised as worth $24,481.07. The property which was transferred to the Chasanna Company was stocks and bonds valued at $48,059.02. The property which was transferred to John L. McGinn consisted of 20 shares of stock of the Chasanna Investment Company valued at $20,967.44 and a 5/24ths interest in an association of the Massachusetts business trust kind entitled the McGinn Estate Company. The assets of the latter at the time of decedent's death were cash in the amount of $13,260.66, rentals due, $5,781.48, and two improved lots in the downtown area of Portland which the parties stipulated were worth $600,000. Thus, the total assets of the McGinn Estate Company were worth $619,042.14 of which 5/24ths is $128,967.11. The McGinn Estate Company is a closely held family association and due to that fact and the additional one that 5/24ths is a minority interest, the probate court deducted 20 per cent from $128,967.11 in order to

determine the true value of the fractional interest and thereby arrived at the sum of $103,173.69.

The Chasanna Investment Company is a family corporation, the capitalization of which is represented by 96 shares of stock, all of which are held by members of the McGinn family. The McGinn Investment Company, prior to 1922, was a corporation. In that year it transferred its assets to the aforementioned McGinn Estate Company. The latter is also a family entity. It is operated by three trustees who have the powers of absolute ownership. All three are members of the McGinn family. The beneficial interest is divided into 100 shares represented by certificates. The holder of a certificate has no interest, legal or equitable, in any specific item of property, but is entitled to have the property administered in his interest and to receive whatever income may be distributed by the trustees. The interest of a certificate holder is transferable by endorsement and surrender of certificate.

The probate department made a determination of the amount of the inheritance taxes and thereupon the state treasurer filed objections. The latter asserted that the court had not appraised some of the assets at their true value and that the determination of value was not in accord with law. A trial was then held, at the conclusion of which the objections were overruled. The resulting decree is challenged upon appeal in two particulars. First, it is argued that the probate court erred when, in lieu of holding that the value of Edith McGinn's taxable share of the McGinn Estate Company was a simple 5/24ths of $619,042.14, it reduced the quotient by 20 per cent. Second, it is argued that the probate court erred

when it held that because the taxes and claims, which the trustee of the first trust (Chasanna Investment Company) was required to pay from the stocks and bonds given to it in trust were greater in amount than the value of the assets and that, therefore, payment fully consumed the assets, it failed to hold that the value of those assets was subject to the collateral tax imposed upon the residuary estate.

The issues presented by the treasurer's appeal are: (1) whether a minority interest in property is subject, under the circumstances of this case, to a discount for inheritance tax purposes; and (2) whether a fund set up by a decedent for payment of expenses and taxes can take as a deduction all taxes paid before the residuary is subject to the collateral tax of ORS 118.100(3). The latter issue may also be stated in this way: when a fund set up to pay expenses and taxes is exhausted by the payments, does any residuum remain in contemplation of law which is subject to the inheritance tax.

■ We shall consider the latter issue first. We turn now to the language of our inheritance tax statute, ORS 118.070. The material portion of that statute reads:

"In ascertaining the net value of estates for the purpose of computing inheritance tax the following deductions, and no others, may be made from the gross value of the taxable estate:

\*    \*    \*    \*    \*

"(e) Income or gift taxes of the United States or the State of Oregon owing at the date of death, but not United States estate taxes."

Cases concerning this section of the statute have twice been before us. In the first, *In re Lewis' Estate,* 160 Or 486, 85 P2d 1032, we upheld the constitutionality

of the act, refusing to allow a deduction for federal estate taxes paid against a contention that disallowing that tax makes the heir taxable on more than was received from the deceased and is, therefore, violative of the due process clause of the Fourteenth Amendment. No such issue is here involved.

In *O'Donnell v. Scott,* 176 Or 500, 159 P2d 198, the issue was whether the federal estate tax should be deducted from the residuum of the estate before computing the collateral tax imposed by ORS 118.100(2). John O'Shea died testate, leaving various devises and bequests and the residuum, in effect, to his nephew James. The residuary share was more than $353,207.70, on which the federal tax exceeded $191,000, for which no deduction was allowed. Therefore, the state tax on the residuary share was $38,293.92 greater than it would have been had the deduction been allowed. In denying a deduction, the decision said:

> "It is doubtful if language could be used which would convey more clearly the legislative intent, that the federal estate tax should be entirely disregarded in computing the state inheritance tax, than that used in the title and body of the act. We conclude, therefore, that the state tax is to be computed under all three paragraphs of § 20-105 [ORS 118.100] as though there were no law providing for a federal estate tax."

We think there can be no question but that the language of the statute fully bears out the quoted interpretation, and unless there is something in the instant case which clearly distinguishes it from the O'Donnell decision, we shall regard ourselves as bound by it.

The appellant has submitted two computations which in approximate figures illustrate the bare bones

issue between the parties, and we will adopt it ourselves. The first is the state's position:

| | |
|---|---|
| Gross probated estate | $24,500 |
| Gross Chasanna trust | 48,000 |
| Total assets under will and Chasanna trust | $72,500 |

Less:

| | | |
|---|---|---|
| Claims | $ 3,850 | |
| Specific legacies | 5,000 | |
| Collateral inheritance taxes paid for the benefit of all donees and legateees except Chasanna and taxable as additional benefits to them | 14,650 | |
| Pro rate part of basic inheritance tax allocable to all the donees and legatees other than Chasanna | 5,250 | |
| Total deductions | | $28,750 |
| Residuary estate (to Chasanna) | | 43,750 |
| Less value of life estate (Mrs. Butz) | | 7,250 |
| Net taxable remainder to Chasanna | | $36,500 |

The executrix' computation begins with $72,500. From that the following is deducted:

| | |
|---|---|
| Claims and specific legacies | $ 8,850 |
| Total Oregon inheritance tax | 25,750 |
| Total federal estate tax | 25,800 |
| Total deductions | $60,400 |

Thus the total deductions exceed the $48,000 given in trust to the Chasanna Company to pay claims, expenses and taxes.

These figures reveal the conflict between the par-

ties. The appellant argues that in figuring how much of the trust goes finally to the Chasanna Company, the amount of federal estate taxes actually paid out of the fund are, in the contemplation of the inheritance tax laws, ignored. Appellant relies on the O'Donnell case. On the other hand, respondent argues that the fund was put in trust to pay taxes. Until the taxes are paid, there is no residuum to go to Chasanna; therefore, the residuum on which the collateral tax is payable is that which is left over after state and federal taxes are paid. In this case that would be nothing. Respondent also relies on language in the O'Donnell case: "This tax is computed upon the net value of that portion of the estate which passes to or for the use or benefit of each collateral heir and not upon the net value depleted by the amount of the federal estate tax." It is argued that if the fund is in fact exhausted, then nothing "passes to or for the use or benefit of" the Chasanna Company. This contention is basically the same which was at the foundation of the attack in *In re Lewis' Estate,* supra. That attack on constitutional grounds was defeated, but this question was not presented. The O'Donnell opinion specifically denied respondent's contention here that a tax is demanded on something never received. There, it was pointed out that the federal and state taxes are concurrent and imposed on the same plane; neither is bound to give credit for the other. *Frick v. Pennsylvania,* 268 US 473, 45 S Ct 603, 69 L ed 1058. The principal difficulty with respondent's contention, and the one which we hold defeats it, is that the statute plainly refuses a deduction for the federal estate tax, and respondent's position just as plainly would effect a tax savings by means of a deduction not contemplated by statute. We hold that,

in contemplation of the Oregon inheritance tax, the amount on which the collateral tax should be computed must include the sum which in fact has been paid the Federal Government.

We cannot accept the distinction which would set this case apart from the O'Donnell situation. Respondent maintains that the difference is the specific fund which was set up by the gift in trust to Chasanna. Had there been no specific fund, that is, had the decedent left the trust property free of the trust and subject to probate under her will, the statute clearly would have contemplated that the residuum would be calculated without regard to the federal taxes. We are aware of no reasoning which would change the tax situation merely because a special fund was set aside.

We have set forth above the nature of the problem regarding the 5/24ths interest in the McGinn Estate Company which the decedent left to her brother and sister. Although the stipulation agreeing on a $600,000 valuation for the improved property was subjected to a challenge in the court below, the question of its validity is not before us. We accept the valuation of $619,042.41 found below. Our question is whether the discount of the proportionate value of a 5/24ths interest in the McGinn Estate Company was justified. The transcript reveals that appellant introduced no witnesses to testify as to the value of the interest. On the other hand, respondent presented the testimony of four witnesses who were expert in either the handling of real estate or securities transactions. All of these witnesses were of the opinion that a discount should be allowed, and their estimates of the amount varied from 20 to 30 per cent of the proportionate interest

in the assets. The trial judge summarized their testimony in his findings of fact, from which we now quote:

"Because of the provisions of the declaration of trust and the results flowing from the fact that the share held by Edith M. McGinn was and is a minor fractional interest, the holder of which has no interest in the business affairs of the trust, and by reason of the further facts the trustees have the power of absolute ownership, hold the trusteeship during the life of the trust, vacancies being filled by the remaining trustees, assented to by the holders of the majority in amount of beneficiaries, and the further fact that the trustees may at any time sell the property of the trust, invest, reinvest, accumulate or distribute so much of the net income as they see fit, and that holders of such beneficial interest having no interest in real property, have no right of partition, the market or fair value of said 5/24ths interest is not the proportionate part of the entire assets of the McGinn Estate Company, but is the quotient of the total value of the assets, divided by 5/24ths, less 20%.

"That the foregoing factors produce the following results:

(a) Non-liquidity—a lack of saleability and marketability.

(b) The shares cannot be readily sold and only at a great sacrifice.

(c) Being a family affair, people are reluctant to purchase, preferring to keep out of other people's family matters.

(d) That the 'Receipt Certificates' evidencing the ownership of the shares cannot be readily used as *collateral* because of the reluctance of the banks and mortgage companies to accept them as such.

(e) That the purchaser of the shares would hold an interest which had no marketability and upon which it would be difficult to secure a bank loan.''

The statutory provisions require that the assets subject to inheritance tax be considered at their "full and true value" (ORS 118.640, 118.670) which is the same as "market value" (ORS 118.700). *In re Estate of Frank,* 123 Or 286, 261 P 893. Where there have been enough sales of the same or similar items, determination of market value is a relatively easy task. Where, as here, the interest is part of a family held corporation and there have been no sales of the stock of the company, the problem is difficult. Valuation then becomes, in part at least, a problem of avoiding the capricious and arbitrary while giving adequate recognition to the real. It is apparent that each case requires a determination on its own merits. See the exhaustive annotations in 24 ALR 1041, 57 ALR 1158, 83 ALR 939, 117 ALR 143, 23 ALR2d 775. Of the many cases in those annotations only one seems to be substantially on all fours with the one here, and there any discount was disallowed in language which in most respects is apt here. However, it appears that in that case no showing was made in the trial court that the value of the stock was less than its proportional share. *In re Coleman,* 147 La 368, 85 So 43. We cannot say that the testimony of respondent's witnesses, all of whom testified that the proportional value is subject to a discount in the market, is entitled to no weight. Particularly is that true since undisputed testimony must be given due weight.

Appellant makes two contentions, but we do not think that one of them is germane to this appeal. To quote from appellant's brief, he says: "It is not competent for members of a family by means of their private arrangements to restrict the right of the state to impose taxes upon the actual value." Properly considered, we agree with the proposition; but we

believe that its meaning is that, by means of an ersatz agreement, the members of a family cannot create an artificial price for the purpose of defeating the state's inheritance tax laws. There is nothing in the record to indicate that the McGinn family did anything of that nature. On the other hand, to say, as we understand appellant does say, that the special circumstances resulting from a practical family business arrangement, which has some effect on the market value of the interests, must be ignored is a proposition to which we cannot agree. That taxes may be minimized is not by itself a disabling feature in business arrangement.

The other contention comes down to this: decedent had a 5/24ths interest in the assets of the McGinn Company which totaled $619,000 plus. In her hands that interest represented the right to receive a proportionate share of the assets on sale or dissolution, so that the proportionate share was the value of her interest. At her death her 5/24ths was divided between her brother John and sister Margaret, each of whom already owned a 5/24ths interest, and who comprised two thirds of the trustees of the company with absolute powers of management, sale and dissolution. The two trustees then had 15/24ths of the shares, a majority, and the value to be determined is that which goes to the beneficiary. *In re Lewis' Estate,* 160 Or 486, 85 P2d 1032. The fact that each trustee was still a minority holder, it is argued, ought to be ignored in the face of their powers as a majority of the trustees to sell the assets and realize the full and true value. Furthermore, it is claimed, the allowance of the discount subjects the valuation to speculation and conjecture.

As far as the last argument is concerned, it should

be recognized that questions of value are always subject to some speculation and conjecture, particularly where direct evidence from the market place is unavailable or equivocal. *State Tax Commission v. Consumers' Heating Co.,* 207 Or 93, 294 P2d 887. The aim is to eliminate those elements so far as possible. The trial judge here, after hearing all the evidence, perceived some factors which, he felt, reduced the valuation. He gave this reduction a fixed percentage. While he chose a figure which does not admit of mathematical demonstration, he chose one based on undisputed testimony and which is well grounded in the record. Therefore, we cannot say he was in error just because his determination was in some degree subject to speculation and conjecture.

We do not believe that the statute calls upon us to consider the value received by each of the beneficiaries as if it had come to them jointly to be exercised as one unit in the affairs of the company. Just as it is true that, working together, John and Margaret comprised a majority, it is true that a combination of one of them with Catherine, as trustee, would leave the other in a minority position. We believe the statute requires that the value to be considered is the 5/24ths interest standing by itself. We recognize that in another case with different facts the situation could be different. "It is not advisable to lay down a hard-and-fast rule which should be followed in estimating the value of the stock in a close corporation. Any method used must stand the test of reason." *In re Estate of Frank,* supra. We cannot say that appellant submitted evidence showing that the determination reached below does not "stand the test of reason."

Reversed with instructions to recompute the inheritance tax in accord with the modifications herein.