## ESTATE OF GERTRUDE BURGER, DECEASED
### *v.* DEPARTMENT OF REVENUE

James W. Young, Forest Grove, represented plaintiff.

Walter J. Apley, Assistant Attorney General, Salem, represented defendant.

Decision in part for plaintiff rendered May 4, 1973.

CARLISLE B. ROBERTS, Judge.

The decedent, at the date of death, October 12, 1970 (at age 78) was the owner of 100 shares of the common stock of Hi-Ridge Lumber Company, a corporation. The question before the court is the determination of the true cash value of those shares for state inheritance tax purposes at the date of death. ORS 113.165, ORS 118.150.

The Hi-Ridge Lumber Company was incorporated in 1953. It has never had any timber of its own and depends solely upon purchases from the national forests for its supply of raw material. From its inception, the corporation's stock has been closely held. In 1963, in addition to Mrs. Burger's 100 shares, 100 shares each were owned by Mr. Fred Voget, by Mr. Richard A. McCurdy and by Mr. Gerhart Bendix (the last named being a son of the decedent; the others are not related to her). At the date of decedent's death, Mr. Voget's shares were held by his son.

The testimony is undisputed that the four shareholders, including Mrs. Burger, were not only the sole stockholders but were also the officers and managers of the corporation, drawing salaries commensurate

with their responsibilities and contributions of time. The corporation has never paid dividends but it has produced net profits in most years. During the years 1960 to 1970, inclusive, there was a net profit except for the year 1960, after deduction of the U. S. income taxes, as follows:

|  | *Gross Profit* | *Net After U.S. Inc. Tax* |
|---|---|---|
| 1960 | $(40,676.02) | $(40,513.42) |
| 1961 | 6,624.66 | 6,624.66 |
| 1962 | 11,368.34 | 9,831.39 |
| 1963 | 34,987.40 | 22,819.39 |
| 1964 | 2,478.94 | 2,478.94 |
| 1965 | 28,837.61 | 28,837.61 |
| 1966 | 11,111.08 | 10,741.27 |
| 1967 | 51,601.58 | 37,356.91 |
| 1968 | 484,951.87 | 355,312.56 |
| 1969 | 277,315.11 | 199,006.90 |
| 1970 | 43,981.85 | 29,506.90 |

On April 10, 1963, Mrs. Burger and her son, Gerhart Bendix, signed an agreement, granting to Mr. Bendix an option to purchase the 100 shares of Gertrude Burger's stock in Hi-Ridge Lumber Company. The option recites that "* * * it is deemed for the best interest of said company, and its other stockholders that the stock held by the first party shall not be transferred or held by any party who shall not be interested in the conduct of its business." In consideration of the payment of $100 per year, Mrs. Burger granted an exclusive and irrevocable right and option to purchase the 100 shares of capital stock at any time up to and including six months after the death of Mrs. Burger at a price of $300 per share. Upon the death of Mrs. Burger, Mr. Bendix exercised the option and, on the basis of this sale, the stock was valued in the estate's inventory at $300 per share.

On November 5, 1971, pursuant to ORS 118.170, the Inheritance and Gift Tax Division of the Department of Revenue objected to the valuation at $300 per share and sought an increase from that amount to $2,750 per share. This increased valuation was based on an appraisal formula that the department has employed in other cases involving closely held stock in a corporation. This formula utilized three factors:

The book value of a share was obtained by taking the surplus of the corporation existing on December 31, 1970, in the amount of $714,584.91 and adding the capital stock value of $100 per share, thus arriving at the book value of $1,886 per share.

The second factor in the formula was based on averaging the last two years' per share earnings prior to the date of death (1968 and 1969), which came to $625, and multiplying this by a factor of seven, thus arriving at a per share amount of $4,375.

The third factor employed the average of the previous five years' earnings of the corporation per share, $285, multiplied by the same factor of seven. This resulted in a per share amount of $1,995.

The department then averaged the three figures, $1,886, $4,375, and $1,995, with the dividend rounded off to $2,750 per share, alleging this to be the true cash value of the stock as of the date of the decedent's death.

The court has questioned the use of this formula, in its application to the facts of this case, and specifically requested defendant for a brief, defending its logic and citing its authority. All that has been offered is that it has been used in other instances and it does recognize the factor of earnings as well as of book value. Its usefulness in this case is unproved.

The plaintiff's witness, Mr. Gerhart Bendix, was shown to be fully conversant with the corporation's history and business. He testified that the earnings for the years 1968 and 1969 were unprecedented and not likely to recur and that the use thereof by the Department of Revenue in both the two-year and the five-year period, described in the formula above, gave an unwarranted emphasis to these amounts. The undisputed testimony of this corporate officer, explaining the unusual earnings, pointed out that the corporation, relying wholly upon stumpage owned by third parties, had bid for and obtained cutting rights in the U. S. Forest areas close to its mill. In the late fall of 1966, a forest fire in the area of the mill burned over 12,000 acres of prime timberland. One of the corporation's timber purchases from the federal government was in the area of the fire and was burned over completely. The corporation had expected to harvest about 8½ million board feet of timber under the contract entered into prior to the fire. Due to the fire, which killed the timber in the sale area, the corporation was authorized to log an additional 11½ million board feet at the original 1966 price, which was very favorable. At just this time, lumber prices began to increase so that during the years 1968 and 1969 the business was unusually profitable. Also, following the fire, in early 1967, the corporation was able to purchase another block of fire-killed timber in the area which proved unusually profitable.

The witness also testified to the highly cyclical and erratic nature of the business of producing lumber for sale on the market so that two years and five years of average earnings were not necessarily representative and ten years would be much more reasonable as

a period on which to base a projection of the earnings of the business.

A third contention of the plaintiff related to the book value used by the Department of Revenue of $1,886 per share on October 12, 1970. While agreeing that the dollar amount was arithmetically correct, the plaintiff's witness testified that a buyer would have been informed that an audit made in 1969 by the Internal Revenue Service had led to a deficiency notice in the sum of $103,000 being given to the corporation which would have effect on the tax years ending on December 31, 1967, and 1968, which remained pending at the time of trial. The Department of Revenue had made no adjustment to the book value on account of this unresolved claim, for reasons not made clear to the court.

Finally, the plaintiff argued the valuation factor of seven used in the Department of Revenue's formula was arbitrary and possibly inappropriate.

Defendant contends that the value of $300 per share based upon the stock option should be disregarded, urging that such a contract does not affect value for inheritance tax purposes because of the mother-son relationship of the contracting parties and because of the irrelevance of a price established in April 1963 as against the date of death, more than seven years later.

The court recognizes the validity of the contentions of both parties. The valuation of closely held stock is extremely difficult where, as here, no sales have been made at arm's length in recent years. The problem is compounded in the case of the stock of this small lumber company. The plaintiff's evidence is

aptly recapitulated by the plaintiff's attorney as follows:

> "Plaintiff did, at the Court's urging, furnish additional information in the course of the second hearing to assist the Court in arriving at a value to place upon the stock of Hi-Ridge Lumber Co. Plaintiff's testimony revealed, more clearly than ever, that the manufacture of lumber products is a chancy business with a strong likelihood that the many highs would be balanced with an equal number of lows. Factors which would affect a potential purchaser's decision would include the company's raw material inventory, and in this particular instance it is clear that Hi-Ridge must actively compete for the purchase of each tract of timber at a time when stumpage prices for nearly all species are rising. The price for the lumber after manufacture, at current levels, will not supply the same rate of profit as in certain past years and there would be no way for an investor to realistically anticipate great growth in his investment. The depressing effect of an unsolved and an unliquidated Federal tax liability hangs like a specter over future earnings of the corporation, and the likelihood that a new form of property taxation, that on standing timber under contract, appears certain to add a new equation into the cost of doing business. The interest to be acquired in our theoretical sale to the willing purchaser is a minority one without any built-in assurance that employment with the company would be coupled to the purchase. Without the declaration of dividends, such an investment may produce no immediate earnings to the investor. * * *"

■■■ For purposes of Oregon inheritance taxes, a leading case is *In re Estate of Frank,* 123 Or 287, 261 P 893 (1927). At 290-291 thereof, the court states:

> "A method of computation which would lead to inequitable or unjust results should be rejected.

It is not advisable to lay down a hard-and-fast rule which should be followed in estimating the value of stock in a close corporation. Any method used must stand the test of reason. After all, courts should be more concerned with results than methods. In recent years the tendency is toward a consideration of all factors, such as (1) asset value; (2) selling price; (3) earning capacity, and the result obtained is the effect of compromise: Pinkerton & Millsap's Inheritance and Estate Taxes, § 324. It may, however, be stated with some degree of certainty that the value of stock in close corporations may be best determined for inheritance tax purposes by using its book value as a basis, unless there is evidence disclosing that such would lead to unreasonable or inequitable results: [citing cases]. But see *In re Jones' Estate* (Ohio App.), 155 N. E. 395, wherein the court refused to accept the book value of the stock as its actual value. In the case last cited there was considered (1) the value and sale of stocks of a similar kind; (2) the activities of the corporation during the different periods of its existence; (3) its earnings; (4) book value of the stock during various years; (5) future prospects, and (6) dividends."

A review of the testimony in the light of these six criteria reveals that (1) neither party produced any testimony with regard to the value and sale of stocks of a similar kind (and the court recognizes that such information probably is not available); (2) the activities of the corporation during the different periods of its existence produce a picture of a fair degree of success in this "chancy business," resulting from the small group of experienced, hard-working entrepreneurs who were the officers, directors and shareholders of the corporation.

The earnings of the corporation, over the last ten years, ranged from a loss in the first year (1960)

of over $40,000 and a high .in the ninth year (1968) of over $355,000 (which has been explained above). It is accepted that these widely varying earnings are typical of the smaller competitors in the business of producing lumber. Any average made of them would be misleading. As an indicator to a knowledgeable buyer, the record of earnings merely raises questions, the answers to which must be sought elsewhere.

It has been agreed that the book value per share of stock as of decedent's death, based upon the corporate records through December 31, 1969, amounts to $1,886 per share. It clearly reflects the company's unusual earnings in the years 1968 and 1969. (The plaintiff testified as to the book value per share for each of ten years, showing a small but steady increase until 1968, as follows: 1960, $120.75; 1961, $137.31; 1962, $161.89; 1963, $218.94; 1964, $225.14; 1965, $297.23; 1966, $326.57, including a one-time credit to surplus; 1967, $426.78, including a federal income tax refund on account of a loss carry-back; 1968, $1,315.06; 1969, $1,812.58. (These last two years clearly reflect the unusual net profit after taxes for those years, as explained above.))

No dividends have ever been paid and, apparently, the salaries paid to the officers have been reasonable.

The court's conclusion is that the value of decedent's stock on the date of her death is most reliably indicated by the corporation's book value; i.e., $1,886 per share. The total value of 100 shares for inheritance tax purposes was $188,600. The defendant's determination of inheritance tax is set aside and it is directed to deliver to the plaintiff a redetermination based upon this decision.