# VIRGINIA REYNOLDS, PERSONAL REPRESENTATIVE, AS SUCCESSOR TO MARVIN THOMAS AND ALVIN REYNOLDS, CO-EXECUTORS OF THE ESTATE OF CASHA YATES, DECEASED *v.* DEPARTMENT OF REVENUE

Vawter Parker, Parker, Abraham & Bell, Hood River, represented plaintiff.

Ted E. Barbera, Assistant Attorney General, Salem, represented defendant.

Decision for plaintiff rendered November 18, 1975.

CARLISLE B. ROBERTS, Judge.

Plaintiff appealed from defendant's Order No. IH 74-8, dated October 22, 1974, which affirmed the assessment of a deficiency of $7,992.75 plus accrued interest on plaintiff's inheritance tax return.

The sole issue in the case is: For purposes of the Oregon inheritance tax, what is the "true cash value" of the release or forgiveness of a debt in a will?

Defendant argued that since Oregon imposes an inheritance tax, which is a tax on the right to receive property of a decedent, "true cash value" should be the value of the thing the beneficiary received and, since the beneficiary's debt to the decedent has been relieved, this value should equal the unpaid amount of the debt plus accrued interest. The plaintiff, on the other hand, asserts that "true cash value" means fair market value of the *res* without regard to the specific value to the beneficiary of the forgiveness under the will.

Casha Yates died on November 16, 1972. In her last will and testament, she forgave any unpaid amounts due on three real property sales contracts which she owned and which covered property in the State of Oregon. Counsel for the parties have stipulated that the total fair market value of the contracts (if sold on the open market) at the time of her death was $106,305, while the total unpaid portions of the contracts, plus accrued interest, were $123,763.

The parties have agreed that there is no issue respecting the inclusion of the value of the release of the contract rights in the inheritance tax

return. In both an estate tax or an inheritance tax, the forgiveness of a debt is a taxable event. *Sadler's Estate (No. 2)*, 383 Pa 606, 119 A2d 197 (1956); *Gearhart's Ex'r and Ex'x v. Howard, etc.*, 302 Ky 709, 196 SW2d 113 (1946); *In re Hirsch's Estate*, 83 Misc 681, 145 NYSupp 305 (1914). The question, therefore, is one of value and not of inclusion.

■ ORS 118.150(1) and 118.160(1) provide that "true cash value" is the measure of value for purposes of Oregon's inheritance tax laws. True cash value has been held to be the equivalent of fair market value. *Unander v. Murphy*, 208 Or 77, 89, 299 P2d 813 (1956). The Supreme Court's adoption of fair market value is reflected in defendant's published rule, OAR 150-118.150(1):

> "The inheritance tax is imposed upon the true cash value of the property even in the case of limited and future estates. True cash value shall be taken to mean the amount in terms of money which a property will bring if exposed for sale in the open market, allowing a period of time typical for the particular type of property involved and under conditions where both parties to the transaction are under no undue compulsion to sell or buy and are able, willing and reasonably well-informed. * * *"

It is therefore the law in Oregon that, for inheritance tax purposes, assets owned by the decedent upon his death are valued at their fair market value. For example, savings bonds owned by the deceased at his death are valued, not at their par or face value, but at market value. *Dept. of Rev. v. 1st Nat. Bank, Etc.*, 4 Or App 477, 479 P2d 256 (1971). The parties in this action apparently agree that if the decedent had bequeathed the real estate contracts to persons other than the purchasers named in the contracts, the fair

market value would be the value used for inheritance tax purposes.

The defendant argues that, for an inheritance tax, the value should be measured by the nature of the gift which arises from the relationship of the parties (such as creditor-debtor); that is, what was received by the beneficiaries of the estate rather than a chose in action transferred from the estate to the beneficiaries. As stated by defendant's counsel, it deems the *res* to be the debt itself, not the evidence of the debt. Therefore, since a debt owed to the estate was forgiven, the value to the beneficiaries should be measured by the dollars once owed but no longer payable, instead of the market value of the indicia of the debt, the contracts of sale and purchase.

The defendant relies upon the difference between an inheritance tax and an estate tax in the instant case. The difference of impact has often been considered. *In re Inman's Estate,* 101 Or 182, 199-200, 199 P 615, 16 ALR 675 (1921); *Seattle-First Nat. Bk. v. Macomber,* 32 Wash 2d 696, 700, 203 P2d 1078, 1081 (1949). But general statements about "the right to receive" or "a tax on the particular devise" are insufficient here.

It is obvious that the testatrix could bequeath through her will only that which she owned. It is clear that what she owned, in respect to each of the three testamentary gifts, was a chose in action; viz., as seller, a claim of indebtedness evidenced by a contract of sale and purchase, secured by her retention of title to the realty, the beneficial ownership of the realty being in the buyers. The test of value of the chose is still found in the market place, not in the dollar indebtedness of the buyers.

The plaintiff correctly argues that fair market

value on the date of death is the proper measure of "true cash value." Under the decisions defining this measure, it must be recognized that a buyer of the chose in action from the decedent's estate, bargaining with the estate as to value, must consider what the debtor could be expected to pay to retire the debt.

■■ In the absence of a prepayment provision, there is no requirement that the debtor would have had to pay on demand or that the decedent would have had to accept the debtor's tender of the balance due plus accrued interest, prior to maturity. *Pedersen v. Fisher*, 139 Wash 28, 245 P 30 (1926). A borrower and a creditor, therefore, would negotiate the amount of payoff on the debt, considering such factors as interest rates, risk of default, and the cost to the lender of finding alternative investments.

For example, interest rates are a very important negotiating factor which would be carefully examined. If the debt bore interest at four percent and the current market rate for such debt was ten percent, the lender would be anxious to have the loan fully repaid so that he could make an investment with a higher yield. On the other hand, the debtor would be happy to keep paying the lower rate. All other things being equal, a creditor would probably take less than the face value of the debt owed.

■ Defendant's published rule suggests that recognition of the considerations set out above is not foreign to it. See the last paragraph of its rule, OAR 150-118.150(1):

> "In evaluating notes, accounts receivable, claims, debts, et cetera, the value of notes and contracts is the amount of unpaid principal plus accrued interest to the date of death, *unless the personal representative can establish by satisfactory evidence that the item is worth less than said*

*amounts because of the low interest rate,* of being uncollectible, or insufficient security, or of debtor being unreliable." (Emphasis supplied.)

Plaintiff and defendant have agreed and stipulated that if the court finds that the fair market value is the measure of value to be taxed herein, the value of the subject property at the date of death was $106,305. Assuming that the rule enunciated herein was followed by counsel in concurring in a fair market value, the court finds this sum to be the amount subject to inheritance tax and directs defendant to issue to plaintiff an amended notice of determination and assessment of inheritance tax in accordance with this decision. However, if counsel cannot agree on a form of decree, this court's Rule 26 must be followed.

The defendant's Order No. IH 74-8 is vacated, set aside and held for naught. Plaintiff is entitled to costs.